THE STATE, PHILIP FLAUCHER, PROSECUTOR, v. THE CITY OF CAMDEN.

1. In a proceeding under the ordinances of the excise board of the city of Camden against a person for selling spirituous liquors without a license, the defendant cannot defend under a license granted by the board of license commissioners for Camden county, organized under the act of 1891. *Pamph. L., p.* 221.

2. The members of such board were not *de facto* officers; the act creating the offices was unconstitutional, and therefore as if it had never been passed. Where there is no office there can be no officer, either *de jure* or *de facto.*

3. A decision of the Supreme Court is to be considered the law of the state until reversed by the Court of Errors, and all judges and inferior courts are bound to so accept it.

---

On *certiorari.*

This writ brings up a conviction of the prosecutor by Police Justice Paul, of the city of Camden, upon a complaint that the prosecutor sold malt and spirituous liquors within

the city of Camden without a license first obtained for that purpose.

Upon the hearing, the prosecutor admitted the sale of the liquor as charged. He offered in evidence a license certificate issued by the county board of license commissioners of Camden county, organized under "An act to create county boards of license commissioners and to define their powers and duties," approved March 20th, 1891.

This certificate, issued April 9th, 1891, contained a grant of a license to sell liquors. The license does not expire until June 30th, 1894.

The justice convicted the prosecutor of selling without a license.

Argued at November Term, 1893, before Justices Depue, Van Syckel and Reed.

For the prosecutor, *Alfred Hugg.*

For the city of Camden, *J. Willard Morgan.*

The opinion of the court was delivered by

Reed, J. The important question presented by the record sent up is whether the certificate granted to the prosecutor by the county board of license commissioners of Camden county should have been adjudged a valid, existing license.

If it was such, it admittedly protected the prosecutor from prosecution for making sales of liquors, either spirituous or malt. The board which granted this license was itself created by an act approved March 20th, 1891. *Pamph. L., p.* 221.

At the present term of the Supreme Court, in the case of *Loucks* v. *Bradshaw, ante p.* 1, this act was adjudged to be unconstitutional. It was held to be an act special and local, regulating the internal affairs of counties, and so, radically inimical to the constitution. The case in which this decision was made was an information in the nature of a *quo warranto*, to challenge the right of the commissioners

appointed under the act, in Camden county, to hold such offices.

In this posture of affairs, can a licensé granted by a board organized under color of the provisions of this act be invoked for any purpose?

The counsel for the prosecutor takes the view that the license still shields the licensee from prosecution. He insists that, admitting the unconstitutionality of the act of March 20th, 1891, the license is not void. His insistence is that the commissioners were *de facto* officers at the time the license was granted, and their act is therefore valid in respect to the public and third parties. *State* v. *Anderson, Coxe* 318; *State, ex rel. Mitchell,* v. *Tolan,* 4 *Vroom* 195; *Clark* v. *Ennis,* 16 *Id.* 69; *Dugan* v. *Farrier,* 18 *Id.* 383.

The radical unsoundness of this position is that, once admitting the unconstitutionality of the act of 1891, it follows that there could exist no legal board known as the "county board of license commissioners" and no such office as that of "license commissioner."

Where there is an office legally existing, and a person is appointed or elected to fill such office, his acts will be held valid as those of a *de facto* officer, although a statute has prescribed an unconstitutional method for the appointment or election of such officer.

Where, however, the office itself is created by an unconstitutional statute, there can be no incumbent of such office either *de jure* or *de facto.*

The leading case upon the question of what is essential to constitute a person a *de facto* officer is undoubtedly that of *State* v. *Carroll,* 38 *Conn.* 449. This case involved the validity of a conviction by the city courts of New Haven. The constitution provided that all judges should be elected by the general assembly. An act of the legislature authorized the clerk of a city court, in the absence of its judge, to appoint a justice of the peace to hold the court during his temporary absence or sickness. The clerk called in the justice of the peace before whom the case was tried. The

point made was that the act of the legislature was unconstitutional and gave the clerk no right to select a judge.

In ·discussing the question whether this justice was to be viewed as a *de facto* judge, Chief Justice Butler reviewed exhaustively the cases upon this subject. He lays down the following definition of what may be regarded as the characteristies of such an official:

"An officer *de facto* is one whose acts, though not those of a lawful officer, the law, upon principles of policy and justice, will hold valid so far as they involve the interests of the public and third persons, where the duties of the officer were exercised:

"*First.* Without a known appointment or election, but under such circumstances of reputation or acquiescence as were calculated to induce people, without inquiry, to submit to or invoke his action, supposing him to be the officer he assumes to be.

"*Second.* Under color of a known and valid appointment or election, but where the officer had failed to conform to some precedent, requirement or condition, as to take an oath, give bond or the like.

"*Third.* Under color of a known election or appointment, void because the officer was not eligible or because there was a want of power in the electing or appointing body, or by reason of some defect or irregularity in its exercise, such ineligibility, want of power or defect being unknown to the public.

"*Fourth.* Under color of an election or appointment by or pursuant to a public unconstitutional law, before the same is adjudged to be such."

It is perceived that each of these four propositions assumes the existence of an office, the duties of which the incumbent assumes to perform.

The fourth proposition, as is pointed out by Mr. Justice Field, in his opinion in the case of *Norton* v. *Shelby County*, 118 *U. S.* 435, relates only to such unconstitutional statutes as provide for the election or appointment of an officer to

fill an existing office. It has no reference to incumbents of offices purporting to be created by an unconstitutional act.

That the existence of a legal office is essential to give validity to official acts is settled by many cases. It is the office which invalidates the acts of the incumbent. An act which lies beyond the scope of official power or duty is unofficial.

So, all acts which are unsupported by the authority of a public agency are void, because there can be no agent when there is no agency. The duties and power must be created by law, else the public cannot be bound.

When the power exists, then, for reasons of public policy, its exercise by agents who irregularly assume to act under it, under certain conditions, will be adopted as valid.

The case in which this rule is most forcibly presented is that of Norton *v.* Shelby County, already mentioned. In this case the legislature of Tennessee had passed an act creating the county commissioners of Shelby county and vesting in them the powers and duties of the quarterly court of the county. They were authorized to subscribe stock in railroads, which the county court had been authorized to subscribe, and to issue bonds for the amount of such subscriptions. The county commissioners, under this act, issued bonds. After the issuance of these bonds, the statute by which these commissioners were created and their duties defined, was declared, by the Supreme Court of Tennessee, to be unconstitutional.

The court held that the power to tax for the purpose of the county could not, by any special or local law, be taken from the county court and conferred upon local tribunals of particular counties, composed of commissioners appointed by the governor.

The question of the validity of these bonds afterwards came before the Supreme Court of the United States, on a writ of error to the United States Circuit Court for the western district of Tennessee.

Mr. Justice Field, in delivering the unanimous opinion of the United States Supreme Court, in Norton *v.* Shelby County,

said : " But it is contended that if the act creating the board was void, and the commissioners were not officers *de jure*, they were nevertheless officers *de facto*, and that the acts of the board as a *de facto* court are binding upon the county. This contention is met by the fact that there cannot be any officer *de facto* or *de jure* if there be no office to fill. As the act attempting to create the office of commissioner never became a law, the office never came into existence.  *  *  *  Their [plaintiff's counsel] position is that a legislative act, although unconstitutional, may in terms create an office, and nothing further than the apparent existence is necessary to give validity to the acts of the assumed incumbent. That position, although not stated in this broad form, amounts to nothing else. It is difficult to meet it by any argument beyond this statement. An unconstitutional act is not a law—it confers no rights ; it imposes no duties ; it affords no protection ; it creates no office ; it is, in legal contemplation, as inoperative as though it had never been passed."

The result was that the bonds issued by this unconstitutional board, before the unconstitutionality of the statute creating it had been declared by any court, were held to be void.

The cases are reviewed by Mr. Justice Field, and his analysis displays the fact that, in each instance, the officer held to be *de facto* was the incumbent of a *de jure* office.

In addition to the cases cited by Mr. Justice Field may be mentioned the case *Ex parte Snyder*, 64 *Mo.* 58. In this case a conviction by a criminal court was held to be void, because the act establishing the court had never gone into effect. It was abrogated by the provisions of a new constitution, which was adopted before the legislative act, creating the court, went into operation.

The court, in its opinion, uses this language : "A quite extensive research has failed to discover an instance where an incumbent has been held an officer, unless there was a legal office to fill."

To the same effect are the cases *In re Hinkle*, 31 *Kan.* 712, and *Town of Decorah* v. *Bullis*, 25 *Iowa* 12.

In the case of *Dugan* v. *Farrier*, 18 *Vroom* 383, the second objection taken was that there was no such office as director of the board of chosen freeholders of Hudson county, and therefore the fact of one acting as such, invalidated the acts of the board. The answer was there is an office of director, although he is by law appointed by the board, instead of being elected by the people, as the director was in that instance.

The only case which I have found which gives countenance to the view that there can exist a *de facto* officer without a *de jure* office, is that of *Burt* v. *Winona and St. Peter Railroad Co.*, 31 *Minn.* 472, also reported in 4 *Am. & Eng. Corp. Cas.* 426.

This point was decided by a majority of one, in a court consisting of five judges. The editor of the reports last mentioned, in a note to this case, cites a number of cases which he thinks strongly tend to support the doctrine laid down by the majority of the judges in Burt *v.* Winona and St. Peter Railroad Co.

I fail to find any, among these cases, which, in my judgment, supports the view that there can exist a *de facto* officer without the existence of a *de jure* office.

*People* v. *Kane*, 23 *Wend.* 414, was a proceeding upon a *quo warranto* to try legal title. It does not touch the present topic, and, besides, it was overruled in *Clark* v. *The People*, 26 *Id.* 599. The case of *Ballou* v. *Bangs* was also a *quo warranto* proceeding to test the legal title of the incumbent. His *de facto* character was not involved.

The remaining cases may be ranged under different instances of *de facto* incumbents of existing offices :

*First.* Where there is none or an irregular appointment and qualification, and the officer has performed the duties of the office. Thus, in *Sharp* v. *Thompson*, 100 *Ill.* 447, a deputy clerk who was verbally appointed and who had not

qualified, was acting as such officer, there being an existing office.

*Second.* Where there was a regular appointment but a failure to qualify. Thus, in *In re Kendall,* 85 *N. Y.* 302, certain commissioners, in respect to municipal improvements, failed to take the statutory oath and went on to perform the duties of an existing office.

*Third.* Where there is a premature appointment to an office before the office has come into being, but after the office has come into existence the officer executes its functions. Thus, in *Fowler* v. *Beebe,* 9 *Mass.* 231, a man was appointed and commissioned sheriff of the county of Hampden before the act creating the county of Hampden went into operation, but after the act took effect he went into possession of the office and acted as such officer. These acts were held valid.

In *In re Boyle,* 9 *Wis.* 264, a judge and clerk were elected before the law establishing a municipal court went into effect by publishing the act. The acts of these officers after the law took effect were held valid.

*Fourth.* Where an officer holds over and executes the functions of an office after the expiration of his term.

Thus, in *Brown* v. *Lunt,* 37 *Me.* 423, a certificate of acknowledgment of a deed made by a justice of the peace in the exercise of a power belonging to the office of justice of the peace after his term had expired, was held good.

In *Cocke* v. *Halsey,* 16 *Pet.* 71, the acts of a clerk *pro tempore* of a court, done in the absence of a regular clerk, were held good, although the period of time for which the court had power to make such appointment had expired.

In *Kreidler* v. *The State of Ohio,* 24 *Ohio St.* 22, a lieutenant of police was held to be a *de facto* officer in respect of acts done after the expiration of his term. In this case, however, the question was not directly involved, as the proceeding was a prosecution against the lieutenant for usurping the office under a statutory provision. The prosecution failed.

In *Threadgill* v. *The Carolina Central Railway Co.,* 73

*N. C.* 178, a summons issued by a clerk whose term had expired, but whose successor had not qualified, was held to be valid.

In each of the cases thus mentioned it is perceived that there existed an office *de jure.*

The counsel for the prosecutor cites the case of *Leach* v. *The People,* 122 *Ill.* 420.

The facts of that case were these : The board of supervisors of Wayne county was composed of fifteen members, one elected from each town. By an unconstitutional act, the county was divided into five districts and the board was composed of five members, one elected from each district. The board, under the new statute, had exactly the same powers as the old board had. The new board issued bonds. It was held that the issuance of the bonds was the act of *de facto* officers. The court said : "After the passage of the act [the void act] there still remained the board of supervisors of Wayne county, the official body for the management of the county's affairs. * * * There was no rival board, but it was the sole acting board of supervisors of Wayne county. * * * The real ground of complaint is that the office legally existing was illegally filled."

A similar case is that of *Cole* v. *The President and Trustees of the Village of Black River Falls,* 57 *Wis.* 111.

Both cases hold that there must be a *de jure* office, to which the acts of those assuming official functions can be referred.

Whether, when the void act is swept away, there remains an office still subsisting, the functions of which were to be exercised by new officers, differently appointed, or whether the void act attempted to erect a new and distinct office, is a question which, in some instances, cannot be readily answered. This is apparent from a comparison of the two cases last mentioned with *Town of Decorah* v. *Bullis, supra.*

The case of *Campbell* v. *Commonwealth,* 96 *Pa. St.* 344, has been cited as an authority for the view that an officer can exist without an office. Two associate judges, not learned in the law, sat with the president judge in Fayette county

and participated in the trial and sentence of a person. They were elected and commissioned as associate judges. It was objected, against the validity of the conviction, that there was no power under the constitution to elect associate judges. It was held that they were officers *de facto*, and their *de jure* character could not be attacked except by *quo warranto*.

The purport of this decision is that, whenever a portion of the functions of government is conferred by law upon agents to be selected—that is, whenever an office is created—the powers thus delegated can, in some instances, be performed jointly by a greater or less number of agents than is provided for by law, so as to validate their acts as those of *de facto* officers.

There was a delegation of power to the court, which power these men were irregularly exercising, and that delegation of official function supported their *de facto* official acts.

The case of *Leach* v. *The People, supra,* involves the same principle.

I conclude, therefore, that an office created by an unconstitutional statute can afford no support to the acts of the incumbents.

The board of license commissioners was a new and distinct body, and when its official existence is wiped out there is no official support for the licenses granted by its incumbents.

I remark that, in my examination of this question, I have not overlooked the cases of *Steelman* v. *Vicars,* 22 *Vroom* 180, and *Harvey* v. *Philbrick,* 20 *Id.* 374.

These cases concern offices under municipalities alleged to be unconstitutionally organized under general acts and the official acts of officers assuming to perform the duties of such offices.

In the first-mentioned case it was held that an attempt to oust an officer of a municipality from his office by the use of the writ of *quo warranto,* upon the ground that the corporation had no existence, because of the unconstitutionality of this general act under which the corporation was incorporated, could not succeed.

The ground of decision was that it was an indirect attack upon the *de jure* character of a *de facto* corporation, and that the legal existence of such corporation could only be brought in question by a proceeding against the corporation itself directly.

The result of this decision is that a court has no right to question the *de jure* character of any *de facto* municipal corporation in any proceeding other than that of a *quo warranto,* to test the legality of the franchise itself. In all collateral litigation the existence of the corporation *de jure* is unquestionable.

The decision in *Harvey* v. *Philbrick, supra,* holding that the official character of a treasurer of a borough commission could not be inquired into upon *certiorari,* was the logical sequence of the doctrine laid in the first-mentioned opinion.

The counsel for the prosecutor relies upon another point. This point receives its significance from the admitted fact that a writ of error has been issued out to take the judgment, in the case of Loucks *v.* Bradshaw, to the Court of Errors for review. It is insisted that a writ of error operates as a *supersedeas,* and so deprives the decision of this court, in that case, of any present force.

But I am unable to perceive in what way the issuance of a writ of error, in the case mentioned, touches the matter now under discussion, for assuming, for present purposes, that such a writ does operate as a *supersedeas,* I cannot perceive how it affects the force of the decision rendered in that case. The only effect of a *supersedeas* would be to stay the execution of the judgment of ouster, with such other incidental judgment as, under the *Quo Warranto* act, the Supreme Court has directed to be entered.

No one is concerned with this question except the parties to that litigation, namely, the state on the one side and the commissioners of Camden county upon the other. The judgment affects no one else beside these parties, as a judgment, nor would its execution in any way affect the licensee, who is a stranger to the *quo warranto* proceeding.

The decision of the Supreme Court in this matter is effective not by way of estoppel, but as a precedent. It involves the construction of a statute, and the construction given to the statute by this court, until reversed by the Court of Errors, is to be considered to be the law of this state. So long as it stands unreversed, every court and judge must so accept it whenever the same question again arises in any other proceeding. The notion that a deliberative opinion of the Supreme Court in one case could be disregarded in any other cause arising in the same court or in any inferior court, and involving the same principle, would be opposed to all settled rules which control judicial conduct.

The conclusion therefore is that the license held by the prosecutor is to be regarded as void. It afforded no defence to the prosecution, and the conviction must be affirmed.