CHARLES W. BOWLBY, PROSECUTOR, v. THE MAYOR
AND CITY COUNCIL OF DOVER, AND THE MAYOR, RE-
CORDER, ALDERMEN AND COMMON COUNCILMEN OF
DOVER.*

PITNEY, J. (dissenting). This case was before the court
on a former occasion, when only the officials of the so-called
"city government" of Dover were parties defendant. It was
then decided that the writ of *certiorari* should be dismissed
because the officials of the "town government" were necessary
parties, without whose presence in court no judgment against
the municipality should be pronounced. *Bowlby* v. *Dover,*
35 *Vroom* 184. Since that decision, and before entry of an
order of dismissal, the proceedings have been amended by
joining the mayor, recorder, alderman and common council-
men of Dover, and that corporation, which is lawfully in
control of the municipal government of the town, is now in
court as a defendant whose rights are sought to be affected
by the result of the proceedings.

The complaint of the prosecutor is that he was removed
from the office of chief of police of the city of Dover on Feb-
ruary 14th, 1898, by a resolution of the city council passed
without charges preferred, and without affording to the prose-
cutor an opportunity to be heard in his defence. I concur
in the view of the majority of the court that the prosecutor
was in fact removed in defiance of the plain terms of the act
under which the then existing *de facto* government of Dover
was organized. *Pamph. L.* 1895, *pp.* 506, 517, 525, 532, §§
24, 42, 53. But I dissent from the conclusions that are de-
duced from that fact.

Dover was constituted and declared to be a town corpo-
rate, by a special act of the legislature passed in 1869.

---

* This opinion not having been filed until November 25th, 1902, was
then inadvertently placed by the clerk with the opinions of November
Term, 1902. My attention was called to it too late to print it with
the opinion of the court, which will be found at *p.* 97 *ante.*—REP.

*Pamph. L., p.* 1161, § 1.    The municipal government thus
created remained in operation continuously until the people
voted in the year 1896 to adopt the provisions of the act of
1895.    By section 7 of the charter of 1869 it is enacted that
the common council may appoint certain subordinate officers,
among others a "town marshal," and that "all the officers of
the said corporation, except those elected by the people, shall
hold their offices during the pleasure of the common council."
By section 13, placitum 19, it is enacted that the common
council may, by ordinance, establish a day and night police,
and define their duties.    So far as appears, no ordinance was
ever passed for this purpose under the authority of the act
of 1869, no such office as chief of police was created, and the
"town marshal" was at the head of the local constabulary.
In my opinion it was not within the power of the common
council, in the face of section 7 of the act of 1869, to confer
upon any subordinate officer a right to a term of office ex-
tending beyond the pleasure of the council.

The Policemen's Tenure of Office act, approved March
25th, 1885 (*Pamph. L., p.* 163; *Gen. Stat., p.* 1534), is
limited by its title so as to apply to cities only, and cannot
constitutionally be extended to other forms of municipality.
*Day* v. *Morristown,* 33 *Vroom* 571; *S. C.,* 34 *Id.* 353; *Jones*
v. *Morristown,* 37 *Id.* 488; *Walling* v. *Deckertown,* 35 *Id.*
203; *Hermann* v. *Guttenberg,* 34 *Id.* 616.    Among the supple-
ments to the act of 1885 just mentioned is one (*Pamph. L.*
1895, *p.* 121) that prohibits removal without cause of a police-
man "in all incorporated towns of over ten thousand inhabi-
tants in counties of the first class;" and another supplement
(*Pamph. L.* 1897, *p.* 128) prohibits such removal without
cause in "all towns, boroughs and townships in counties of
the first class."    Dover has less than ten thousand inhabitants,
and it is situate in a county not of the first class.    There-
fore the constitutional validity of this method of classifying
municipalities, with reference to their location within a
populous county, would not require discussion in this case,
even could we ignore the limitation resulting from the men-
tion of cities only in the title of the principal act.

The act of March 20th, 1895, for creating a police department in second class cities (*Pamph. L., p.* 369; *Gen. Stat., p.* 1548), and the act of March 8th, 1899, relating to police departments in cities and regulating the tenure of office, &c. (*Pamph. L., p.* 26), are likewise limited so as to apply to cities only, and cannot be extended to embrace incorporated towns such as Dover.

Up to this point, therefore, we find no such office created or recognized by law as "chief of police" of Dover; nor any fixed term for such office.

In the spring of the year 1896 the people of Dover adopted the form of government prescribed by the act of 1895 first above referred to. By the terms of that act (*Pamph. L., p.* 506, §§ 9, 10, 42) the chief of police was a statutory officer, with prescribed functions, having an official term of three years, and subject to removal only for cause. By section 53 of the same act, the city council was empowered by ordinance to establish a day and night police, and by section 24, as well as by the other sections just referred to, the power of the city council to remove from office was defined.

The case shows that the city council which took office under this act passed an ordinance to establish a day and night police, and appointed the prosecutor as chief of police. The ordinance prescribed no term of office, but, under the act of 1895, the prosecutor claims to have become entitled to a term of three years. His removal by the city council, of which he now complains, took place before the expiration of that term.

But it has been authoritatively decided that the act of 1895 is unconstitutional and void, and that it conferred no lawful authority upon the city council. Some time after the prosecutor was deposed by the city council, that council was itself ousted from office in *quo warranto* proceedings at the instance of the attorney-general, because of the nullity of the act of 1895. *Attorney-General* v. *Dover,* 33 *Vroom* 40; *S. C. on error, Id.* 647.

It is thus conclusively established, not only that the mayor and city council were usurpers, but that in so far as they as-

sumed to exercise functions conferred only by the act of 1895, they were acting without color of right; for an unconstitutional law confers rights upon nobody. Conceding, therefore, that the mayor and city council were officers *de facto,* in the sense and to the extent that they constituted the actual governing body of the town of Dover, yet it seems to me plain that their powers must be confined within the limits of such constitutional legislation as then existed, providing for the government of that political subdivision of which they were in control. Whatever the charter of 1869 authorized the governing body of the town to do, the usurping mayor and council could do for the time being, and nothing more. They could not confer upon the prosecutor any right to a public office that had no existence outside of the pages of an unconstitutional law. In some instances officers *de facto* are permitted to confer upon others a *de jure* title to office, but, of course, this applies only where there exists a *de jure* office to be filled. Unless there be a *de jure* office there cannot be a *de facto* officer; much less can there be a *de jure* officer. These propositions are, I believe, now established beyond the possibility of further dispute. *Mech. Pub. Off.,* §§ 315, 328; *State* v. *Carroll* (38 *Conn.* 449), 9 *Am. Rep.* 409; *Norton* v. *Shelby County,* 118 *U. S.* 425, 442; *Flaucher* v. *Camden,* 27 *Vroom* 244; *Kirby* v. *State,* 28 *Id.* 320. The cases of *Erwin* v. *Jersey City,* 31 *Id.* 141, and *Brinkerhoff* v. *Jersey City,* 35 *Id.* 225, related to offices that had a lawful existence.

In *Attorney-General* v. *Town of Dover,* 33 *Vroom* 138, this court refused to grant a *mandamus* to require the officials of the town of Dover to exercise and discharge their duties under the charter of 1869, pending the determination of a writ of error that had been brought to review the decision of this court in the *quo warranto* case. The ground of the refusal was that the city officials constituted a *de facto* government until actually ousted by the attorney-general in the *quo warranto* proceedings, and that as the execution of the judgment of ouster had been stayed by the writ of error, the *de facto* government must in the meantime prevail and be respected. This decision, however, did not at all define

what the powers of the *de facto* government should be, or lend any validity to the unconstitutional law beyond its effect in giving color of office to the *de facto* government. I do not understand that decision as in anywise countenancing the notion that a *de facto* government can derive powers from an unconstitutional law.

If my reasoning thus far is correct, it follows as a necessary consequence that there was no such office as chief of police of Dover, and certainly no lawful term for such an office extending beyond the pleasure of the council. It follows likewise that the prosecutor had no legal right to a continued tenure of the office. Therefore the action of the city council in deposing him worked no legal wrong, and it is a matter of entire indifference whether he was deposed for cause or without cause.

For these reasons I think the prosecutor is not entitled to draw the lawful municipal government of the town of Dover into any controversy respecting transactions had between him and the former *de facto* government; those transactions having had relation merely to a fictitious title to a fictitious office.

The resolution removing him from office cannot affect his right to be paid for his services up to the time of his removal; beyond that time he is not entitled to be paid. *Erwin* v. *Jersey City,* 31 *Vroom* 141.

If the present writ of *certiorari* and the matters returned therewith have any claim to the consideration of this court, it must be on the ground that our determination setting aside the proceedings under review will have some effect in changing the rights of the parties; or rather in restoring the prosecutor to some rights of which he has been unlawfully deprived. Being convinced that he never had any rights in the premises of which he could be deprived, I think the writ of *certiorari* should be dismissed.