LEWIS LANG, RELATOR AND PLAINTIFF IN ERROR, v. THE MAYOR AND CHIEF OF POLICE OF THE CITY OF BAYONNE, RESPONDENTS AND DEFENDANTS IN ERROR.

Argued July 2, 1906—Decided July 2, 1907.

An officer appointed, under authority of a statute, to fill an office created by that statute is at least a *de facto* officer, and acts done by him antecedent to a judicial declaration that the statute is unconstitutional are valid, so far as they involve the interests of the public and of third persons.

On error to the Supreme Court. For opinion of that court, see 44 *Vroom* 109.

For the plaintiff in error, *Gilbert Collins.*

For the defendants in error, *Thomas F. Noonan* and *Elmer W. Demarest.*

The opinion of the court was delivered by

GUMMERE, CHIEF JUSTICE. The plaintiff in error, by this proceeding, seeks to obtain a peremptory *mandamus* against the defendants in error, compelling them to restore him to his position as a member of the municipal police force.

It appears from the alternative writ, which was allowed by the Supreme Court, and from the return thereto that, by the charter of the city of Bayonne, granted by the legislature in 1869, the board of councilmen of the city were authorized to establish a police force, and to regulate and define the manner of the appointment and removal of its members, and their duties and compensation; that the mayor was made the head of the police force when it should be created; that shortly after the incorporation of the municipality a police department was created under the provisions of the charter, and that on the 3d of July, 1893, the plaintiff in error was appointed a member of the force. It further appears that a

supplement to an act entitled "An act to remove the fire and police department in cities of this state from political control," was passed by the legislature on March 30th, 1905, by the provisions of which a board of police commissioners was created for the city of Bayonne with power to appoint and discharge for cause all members of the police force of that city; that the members of the board were appointed and installed into office on the 8th of April, 1905, and immediately organized; that on April 17th, 1905, there was presented to the board, in writing, certain charges against the plaintiff in error, upon which a trial was had, resulting in his discharge from the force. The ground upon which he seeks a reinstatement is that the statute of 1905, by which the board of police commissioners of Bayonne was created, and under which its members were appointed, is unconstitutional; that the scheme provided by the charter for the creation and regulation of the police force remained unaffected by it; and that the acts of the so-called board, therefore, are absolutely null and void.

At the term at which the hearing of this cause was had before the Supreme Court, that tribunal had before it for consideration and determination the case of *State* v. *Nealon,* 44 *Vroom* 100, which was a *quo warranto* proceeding, attacking the right of the members of the board of police commissioners of Bayonne to hold their respective offices, on the ground that the supplement of 1905, above referred to, was unconstitutional, and the conclusion reached by the Supreme Court in that case was in favor of this contention.

Notwithstanding the conclusion reached by it in the Nealon case, however, the court considered that upon the facts set out in the alternative writ and the return thereto, hereinbefore recited, the board of police commissioners, at the time when it dismissed the relator from his position as a member of the police force, was a *de facto* body, exercising a public function under color of right, and that therefore its action in dismissing the relator could not be successfully challenged, resting its conclusion upon its earlier decisions in the cases of *Mitchell* v. *Tolan,* 4 *Vroom* 195; *Bownes* v. *Meehan,* 16 *Id.* 189; and *Dugan* v. *Farrier,* 18 *Id.* 383. As a result of this

determination judgment was directed for the municipality. To review that judgment the present writ of error is sued out.

Plaintiff in error rests his right to a reversal of the judgment against him upon the ground that the conclusion of the Supreme Court that the board of police commissioners of Bayonne, appointed under authority of the supplement of 1905, was a *de facto* body, notwithstanding the fact that the statute is unconstitutional, is unsound in law, and is not supported by the cases relied upon by that tribunal as justifying its decision. He points out that Mitchell *v.* Tolan was a *quo warranto* proceeding, challenging the right of Tolan to hold the office of alderman of the city of New Brunswick, upon the ground that he was not legally elected to the office; that in Bownes *v.* Meehan the question presented was whether a *de facto* board of freeholders, the members of which body had not been lawfully elected, could fill the office of keeper of the county jail and workhouse; and that in Dugan *v.* Farrier the question was whether the action of a board of freeholders which was presided over by an officer styled a "director," after that office had been abolished, was valid, and that the decision in the latter case was rested upon the ground that, notwithstanding the abolition of the office of director, there still remained the position of presiding officer of the board, and that, as the former director had assumed to act as such presiding officer with the acquiescence of the board, he was its *de facto* president. Having called our attention to the question presented in the cited cases, he then points out that what was held by the court in each of them was that the official act of a *de facto* incumbent of a legally existing office is valid, so far as the rights of the public or third persons are concerned. He then argues that the question which the present case presents is an entirely different one, namely, whether there can be a *de facto* incumbent of an office which has no legal existence, and cites the decision of the Supreme Court in the case of *Flaucher* v. *Camden*, 27 *Vroom* 244, as an authority in support of his contention that this question must be answered in the negative. An examination of the opinion in the Flaucher case discloses not only that the legal

question there presented for consideration is identical with
that which this case presents, but that the conclusion then
reached by the Supreme Court is in direct opposition to that
announced in the opinion delivered by it in this case.    In
the earlier case the plaintiff in error was tried in the police
court of the city of Camden for selling liquor without a li-
cense.    His defence was that he held a license from the county
board of license commissioners.    Notwithstanding this fact
he was convicted.    On writ of error this conviction was af-
firmed by the Supreme Court.    The ground of affirmance was
that the statute creating the county board of license com-
missioners was unconstitutional, as had already been de-
termined by it at the same term in a *quo warranto* proceed-
ing brought against the members of the board (*Loucks* v.
*Bradshaw, Id.* 1) ; that being unconstitutional, the so-called
county board of license commissioners never had legal exist-
ence, and that consequently the members of the board were
neither *de jure* nor *de facto* officers; the court declaring that
"where the office itself is created by an unconstitutional
statute there can be no incumbent either. *de jure* or *de facto*,"
and that consequently the license was mere waste paper.    The
opinion in the Flaucher case is a carefully considered one,
and is fully supported by the authorities cited in it (with the
exception of one which will be later referred to), notably by
that of *Norton* v. *Shelby County*, 118 *U. S.* 425.    In that
case Mr. Justice Field declared that the contention there
made, viz., that if the act creating the board of county com-
missioners of Shelby county was void and the commissioners
were not officers *de jure* they were nevertheless officers *de
facto*, was met by the fact that there cannot be any officer
*de facto* or *de jure* if there be no office to fill; that the act
attempting to create the office of commissioner never became
a law and that therefore the office never came into exist-
ence; that "an unconstitutional act is not a law—it confers
no right; it imposes no duties; it affords no protection; it
creates no office; it is, in legal contemplation, as inoperative
as though it had never been passed."    Notwithstanding the
great weight which the opinion of so distinguished a jurist

carries with it; notwithstanding that Norton *v.* Shelby County has been frequently cited with approval in other jurisdictions, I am unable to accept as sound the doctrine upon which it is rested, namely, that an unconstitutional law is void *ab initio* and affords no protection for acts done under its sanction. That it works injustice in its application to the citizen is apparent. The Flaucher case is a pregnant example of the truth of this assertion. The legislature had enacted a general law, making the unlicensed sales of intoxicating liquor a criminal offence, but legalizing such sales when made by a person holding a license from the proper authority. It then, by a subsequent statute, created the county board of license commissioners the proper authority to grant such licenses in the county of Camden. Flaucher applied to, and received from, this board a license to sell liquors at his saloon in the city of Camden. At that time the law creating the county board stood upon the statute book, apparently as valid, as much entitled to be respected and obeyed as the enactment which prohibited the sale of liquor without a license. And yet, notwithstanding that he scrupulously observed the law, as declared by the legislature, he was made a criminal by judicial decision, a decision which in its operation and effect was as much *ex post facto* as any statute which makes criminal an antecedent act which violated no law at the time when it was done.

The vice of the doctrine of Norton *v.* Shelby County, as it seems to me, is that it fails to recognize the right of the citizen, which is to accept the law as it is written, and not to be required to determine its validity. The latter is no more the function of the citizen than is the making of the law. Each of these functions has been delegated by the constitution, the one to the judicial and the other to the legislative branch of the government. And it is to be observed that the judicial function of determining the validity of statutes is confined within a very narrow scope. Courts are not vested with the general supervision of legislation. They have received no authority from the people to inspect each statute, as it comes from the hands of the legislature, and declare whether or not it infringes constitutional limitations. The function of the judicial de-

partment with respect to legislation deemed unconstitutional is not exercised *in rem*, but always in *personam*. *Allison* v. *Corker*, 38 *Vroom* 596. Only such statutes as affect the rights of parties to judicial proceedings are ever subjected to the scrutiny of the courts. And these are comparatively few. Of the twenty-four hundred and more acts of the legislature passed in this state during the last ten years, less than four hundred have received judicial consideration. The remaining two thousand which are upon the statute book (except those which have been repealed by the legislature) are accepted and enforced as a part of the law of the land. And this, in my judgment, is the only way in which a government such as ours can be safely administered. To require the citizen to determine for himself, at his peril, to what extent, if at all, the legislature has overstepped the boundaries defined by the constitution in passing this mass of statutes would be to place upon him an intolerable burden, one which it would be absolutely impossible for him to bear—a duty infinitely beyond his ability to perform. In my opinion the provisions of a solemn act of the legislature, so long as it has not received judicial condemnation, are as binding upon the citizen as is the judgment of a court rendered against him so long as it remains unreversed. And this, as I understand his opinion, was the view expressed by Chief Justice Butler in *State* v. *Carroll*, 38 *Conn.* 449, notwithstanding that it is cited by Justice Field as an authority for the conclusion reached by him in Norton *v.* Shelby County, and by Justice Reed in support of the view expressed by him in Flaucher *v.* Camden. The Carroll case is admittedly the leading one upon the question of what is essential to constitute a person a *de facto* officer. It is referred to by Justice Field as "a landmark of the law," "an elaborate and admirable statement of the law," and no one can read it without concurring in this encomium upon it. The Chief Justice, having first declared that "an officer *de facto* is one whose acts, though not those of a lawful officer, the law, upon principles of policy and justice, will hold valid so far as they involve the interests of the public and of third persons, where the duties of the office are exercised under color

of an election or an appointment by or pursuant to a public
unconstitutional law, before the same is adjudged to be such,"
refers to numerous cases the reasoning of which, in his judg-
ment, supports this proposition. Justice Field perceiving that
this statement of what constitutes an' officer *de facto,* if ac-
cepted as broadly as it is made, militated against the conclu-
sion which he himself reached, points out that none of the
cases cited by Chief Justice Butler "recognize such a thing as
a *de facto* office, or speak of a person as a *de facto* officer except
when he is the incumbent of a *de jure* office" and, for this
reason, asserts that the learned Chief Justice, in the proposi-
tion laid down by him, "refers not to the unconstitutionality
of the act creating the office, but to the unconstitutionality of
the act by which the officer is appointed to an office legally
existing." But it is to be observed, as has already been stated,
that Chief Justice Butler did not refer to the cases which he
cited as decisions upon the very point embraced in his propo-
sition, but merely for the purpose of showing that, by their
reasoning, they supported it. That his proposition included
unconstitutional laws which created offices as well as uncon-
stitutional laws by which officers were appointed to offices
legally existing is, as it seems to me, made clear by the follow-
ing expression of view found on page 472 of his opinion. Re-
ferring to a statement made in an earlier opinion delivered by
him (*Brown* v. *O'Connell,* 36 *Conn.* 432) to the effect that a
law passed by the legislature cannot have color of authority or
the semblance of authority unless it appears *prima facie* to be
law, and that it cannot so appear if it is manifestly repug-
nant to the constitution, he says: "The inference to be drawn
from these assumptions necessarily is that a manifestly un-
constitutional law is without any force whatever, and that
whether manifestly unconstitutional or not, and whether it
have the appearance and force of law or not, are questions for
the private judgment of the citizen. If these assumptions
were true they would dispose of this case, but they are of
novel impression and fundamentally erroneous. Every law
of the legislature, however repugnant to the constitution, has
not only the appearance and semblance of authority but the

force of law.  It cannot be questioned at the bar of private
judgment, and, if thought unconstitutional, resisted, but must
be received and obeyed as, to all intents and purposes, law
until questioned in and set aside by the courts.   This prin-
ciple is essential to the very existence of order in society."
Having laid down this principle, he then proceeds to say:
"If, then, the law of the legislature which creates an office
and provides an officer to perform its duties must have the
force of law until set aside as unconstitutional by the courts,
it would be absurd to say that an officer so provided had no
color of authority."

This excerpt not only demonstrates that the learned Chief
Justice intended to lay down his proposition as broadly as he
stated it, but is convincing of its soundness.   So necessary
to the successful carrying on of a republican form of govern-
ment is the principle which I understand the Chief Justice
to have laid down, namely, that a statute which creates an
office and provides an officer to perform its duties must have
the force of law until condemned as unconstitutional by the
courts, and that in the meantime the officer so provided is an
officer *de facto,* that it is impliedly recognized and acted on,
almost universally (so far as my examination has disclosed),
in the case of municipal corporations which have been created
by unconstitutional laws.   Such corporations are declared to
be *de facto* corporations.   *Dill. Mun. Corp.,* § 43a; *Burt* v.
*Winona, &c., Railroad Co.,* 31 *Minn.* 472, and cases cited.
And not only so, but courts refuse to permit the legality of
their existence to be called into question, except by the state
itself, through its attorney-general, and hold that, so long as
the state does not see fit to interfere and terminate the exist-
ence thereof by direct proceeding brought by the attorney-
general, a municipal corporation which has been created by
an unconstitutional statute may exercise upon the citizen,
through its officers, the powers conferred upon it by the
statute as fully and completely as if it was created by a law
valid in every particular.

And yet, if it be true that there cannot be such a thing as
a *de facto* officer unless there be a *de jure* office, on what

theory can the acts of such officers be recognized as valid? How can it be true that a law of this character, the validity of which no one but the attorney-general can challenge, and which is permitted to be enforced to the fullest extent against the public, "confers no rights, imposes no duties, affords no protection, creates no office," and "is, in legal contemplation, as inoperative as if it had never been passed?" It may be said that, strictly speaking, the law does not recognize a municipality so created as an existing corporation; that it does not recognize the acts of its pretended officers as valid; but that it merely refuses to permit the right of such officers to exercise their functions to be challenged in order that a government which exists in fact may not be overthrown until another is provided. But this, it seems to me, is a mere verbal distinction. The fact remains that the acts of the incumbents of such so-called officers are as potent, so far as the public is concerned, as are the acts of any *de jure* officer who performs the duties of a legally existing office.

In my judgment, the same public policy which requires obedience from the citizen to the provisions of a public statute which creates a municipality, and provides for its government, even though unconstitutional, so long as it has not received judicial condemnation, equally justifies his obedience to every other law which the legislature has seen fit to enact until such law has been judicially declared to be invalid.

I conclude that an officer appointed under authority of a statute to fill an office created by the statute is at least a *de facto* officer, and that acts done by him antecedent to a judicial declaration that the statute is unconstitutional are valid, so far as they involve the interests of the public and of third persons; that the doctrine promulgated by the Supreme Court in Flaucher v. Camden rests upon an unsound basis and should not be followed.

The judgment under review must be affirmed for the reason stated in the opinion delivered in the court below, namely, that the board of police commissioners of Bayonne, at the time of its dismissal of the plaintiff in error from the municipal police force, was a *de facto* body and its action, therefore, valid as against him.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, FORT, REED, TRENCHARD, BOGERT, VREDENBURGH, VROOM, GREEN, GRAY, J.J.   10.

*For reversal*—None.