CHARLES D. HYMAN, WHO SUES AS WELL FOR THE COUNTY OF MONMOUTH AS FOR HIMSELF, PLAINTIFF, v. LONG BRANCH KENNEL CLUB, INCORPORATED, A NEW JERSEY CORPORATION, DEFENDANT.

Decided December 29, 1934.

For the plaintiff, *Charles D. Hyman, pro se* (*Milford J. Meyer,* of the Philadelphia bar, of counsel).

For the defendant, *Tumen & Tumen* (*David H. Davis*).

LAWRENCE, C. C. J. This case was submitted to the court, at the Monmouth Circuit, without a jury, by consent, on a stipulation of facts. It is in form a *qui tam* action, sounding in debt, in which plaintiff as a common informer seeks to recover of defendant, for himself as well as the county of Monmouth, the penalty prescribed by section 8 of "An act to prevent gaming" (Rev. 1877, page 459; *Comp. Stat., p.* 2625), which as pertinent reads as follows:

"No person shall within this state, publicly or privately, erect, set up, open, make or draw any lottery prohibited by the laws of this state; and any person who shall offend in the premises shall forfeit for every such offense two thousand dollars to be recovered by action of debt, with costs, by any person who will sue for the same, in any court of record having cognizance thereof, and all penalties recovered under this section shall be appropriated one-half to the use of the county

in which the action or actions for the recovery thereof shall have been prosecuted, and the residue to the informer * * *."

Constitutional and statutory provisions pleaded as existing and as pertaining and applicable to the case include article 4, section 7, subsection 2, of the state constitution, as amended in 1897:

"No lottery shall be authorized by the legislature or otherwise in this state, and no ticket in any lottery shall be bought or sold within this state, nor shall pool-selling, bookmaking or gambling of any kind be authorized or allowed within this state, nor shall any gambling device, practice or game of chance now prohibited by law be legalized, or the remedy, penalty or punishment now provided therefor be in anyway diminished," also section 1 of the act to prevent gaming, *supra*:

"That all wagers, bets or stakes made to depend upon any race or game, or upon gaming by lot or chance, or upon any lot, chance, casualty, or unknown or contingent event, shall be unlawful;" and sections 57 and 65 of "An act for the punishment of crimes" (*Pamph. L.* 1898, *pp.* 809, 812; *Comp. Stat., pp.* 1764, 1766), prohibiting lotteries and pool-selling, declaring them to be misdemeanors and providing punishment therefor.

The stipulation of facts recites that on July 31st, 1934, and for a total of thirty-eight days thereafter, defendant did in the city of Long Branch, in Monmouth county, set up and maintain a racing track for the running of greyhounds and did there operate a pari-mutuel betting system, the method of which was as follows: on each of the dates in question, defendant conducted a number of greyhound races at its track, and did print, issue and sell programs setting forth lists of the greyhounds participating in each race, the name of the dog being given, its "post" position in the race and attached thereto a mutuel number; that prior to each race on the dates mentioned, defendant did offer, barter and sell to each of a large number of persons cards, receipts or ticket in a pari-mutuel upon such race and delivered such

tickets to persons purchasing them, each ticket setting forth the mutuel number of one of the greyhounds in a race, the price of $2 or $5 paid for such ticket, and an indication of whether the ticket was sold and the bet made for the greyhound to "win, place [finish second] or show [finish third]" in the race.

The stipulation further recites that defendant did then total upon each race, or add together and pool, the amount paid for tickets, and (after deducting a commission of fifteen per cent. and the odd cents of all redistribution to be made exceeding a sum equal to the lowest multiple of ten) did divide or redistribute the balance of said pari-mutuel to the persons having purchased tickets upon the greyhound finishing the race in the position indicated upon such tickets, or to the bettor, upon presentation of such tickets; persons having purchased tickets in such pool upon greyhounds not finishing the race in first, second or third positions, or in positions behind that indicated on the ticket, not receiving any part or portion of the pari-mutuel, nor any other money or thing of value in return for such tickets. The sole determinant as to the amount to be paid or whether anything was to be paid by defendant to any person purchasing a ticket in any of the pari-mutuels was the result of the race upon which the bet was made and the number of the "win, place or show" tickets sold therein.

It may be said in passing that the Supreme Court, in *State v. Lovell,* 39 *N. J. L.* 458, 463, held that a system of betting such as that set forth in the stipulation is within the category of a lottery, so that it would appear that defendant carried on and conducted a lottery in violation of section 8 of the Gaming act, as cited, and subjected itself to the penalties therein provided, unless permitted to do so or protected by certain acts of the legislature passed in the sessions of 1933 and 1934. And this is its defense.

It pleads the act enttiled "An act to repeal section 8 of an act entitled 'An act to prevent gaming' (Revision of 1877), approved March twenty-seven, one thousand eight hundred and seventy-four" (*Pamph. L.* 1933, *ch.* 391, *p.* 1093; *N. J.*

*St. Annual* 1934, 85-8), which repealer relates to the section under which the present suit is brought; and chapters 56 and 179 of the laws of 1934, which purport to permit the leasing of public buildings and other places in which may be conducted and operated greyhound racing under the pari-mutuel system, and the licensing of persons or corporations by the state racing commission to operate and maintain tracks therefor and to permit the use of the pari-mutuel system of betting, which was declared thereby not to be gambling prohibited by law.

Defendant contends that its conduct was under legislative sanction, therefore, and since the statutes in question had not been declared unconstitutional by the court of last resort at the time, it cannot be subjected to the penalty provided by section 8 of the Gaming act, which section had been in terms repealed. In other words, it rests its case on *Lang* v. *Bayonne,* 74 *N. J. L.* 455; 68 *Atl. Rep.* 90, where it was said that "every law of the legislature, however repugnant to the constitution, has not only the appearance and semblance of authority, but the force of law. It cannot be questioned at the bar of private judgment, and, if thought unconstitutional, resisted, but must be received and obeyed as, to all intents and purposes, law until questioned and set aside by the courts;" and (at *p.* 459) it was pointed out that cases to the contrary fail to recognize the right of the citizen, which is to accept the law as it is written, and not to be required to determine its validity, since the latter is no more the function of the citizen than is the making of the law; also *Texas Co.* v. *The State of Arizona,* 254 *Pac. Rep.;* 53 *A. L. R.* 258, in which the question as to whether a citizen is liable for a penalty because he has in good faith followed the provisions of a law which on its face was duly made, when those parts under which he acted are afterwards held to be unconstitutional, was answered in the negative. Likewise *Overpeck Land Corp.* v. *Ridgefield Park,* 104 *N. J. L.* 402, 404; 140 *Atl. Rep.* 300.

In behalf of plaintiff, it was argued, however, that the principle enunciated in *Lang* v. *Bayonne, supra,* involved a

question of public policy relating to the administrative acts of *de facto* officers in municipal government, the statutory authority under which they had acted having thereafter been declared unconstitutional; while here the rule is not applicable in the sense in which it was there applied, in that defendant claims to have had the right to engage in conduct inhibited by a provision of the fundamental law of the state under legislative permission in direct conflict with it.

It has been said that the granting of a right or privilege to individuals, under an obviously unconstitutional act, affords no protection to those who use or exercise it, as this does not embrace solely an administrative or public function, performed under invalid legislation, which public policy requires should be sanctioned or approved by judicial action when brought in question. In *Norton* v. *County of Shelby,* 118 *U. S.* 425, there is the expression that "An unconstitutional act is not a law; it confers no rights; it imposes no duties; it affords no protection; it creates no office; it is, in legal contemplation, as inoperative as though it had never been passed." See, also, *Chicago I. and R. Co.* v. *Hackett,* 228 *Id.* 559, and *Flaucher* v. *Camden,* 56 *N. J. L.* 244; 28 *Atl. Rep.* 82, overruled in *Lang* v. *Bayonne* (at *p.* 463).

It is apparent that these decisions and those in the cases cited by counsel for defendant, especially in Lang *v.* Bayonne, in our own court of last resort, are not in harmony, and while it is argued that the latter should not be regarded as applicable to the present litigation, it is not so clear that this is so, in view of its criticism of Norton *v.* County of Shelby and Flaucher *v.* Camden. In any event, until the Court of Errors and Appeals so limits its application, which it has not yet done, the trial court does not feel at liberty to do so, for this reason: "The interpretation given to a statute or constitutional provision by a court of last resort is binding on all departments of the government, including the legislature; and a decision by such a court that a statute is unconstitutional has the effect of rendering such statute null and void from the date of its enactment, and not only from the date on which it is judicially declared unconstitutional. But

a decision that a statute is unconstitutional, to be effective, must be distinct and positive. And if a decision declaring a statute unconstitutional is based on stipulated facts, the decision does not wipe the act from the books, but merely denies its efficacy as to the party before the court who has admitted the existence of a state of facts as to which in the opinion of the court the statute is unconstitutional" (12 *C. J.* 800, § 228); but where, as here, recovery is sought for the violation of a penal statute, in a *qui tam* action, by one who does not represent himself alone, and a doubt, arising on constitutional grounds, exists as to whether the violation of such statute has been sufficiently shown to justify the imposition of the penalty, it would appear to be the better practice to deny a recovery. This conclusion is reached in view of the holding and the discussion germane to the present suit in *Lang* v. *Bayonne, supra.* Judgment may accordingly be entered in favor of defendant and against plaintiff.