CHARLES D. HYMAN, WHO SUES AS WELL FOR THE COUNTY OF MONMOUTH, AS FOR HIMSELF, PLAINTIFF-APPELLANT, v. LONG BRANCH KENNEL CLUB, INCORPORATED, A NEW JERSEY CORPORATION, DEFENDANT-RESPONDENT.

Argued February 13, 1935—Decided May 17, 1935.

124

For the appellant, *Milford J. Meyer,* of the Philadelphia bar (*Alexander K. Blatt,* on the brief).

For the respondent, *Jonas Tumen.*

The opinion of the court was delivered by

PARKER, J.   The facts were stipulated, and are sufficiently set forth in the decision of the learned trial judge, *ubi supra.* That decision also sets out the constitutional provision applicable, relating to lotteries, gaming, &c. (article 4, section 7, subsection 2, as amended) and the relevant gaming acts existing when the constitutional amendment was adopted in 1897. On the stipulated facts the trial judge held that the acts charged in the complaint and admitted by the stipulation constituted violations of section 8 of the Gaming act (*Comp. Stat., p.* 2625), providing for recovery of penalties in a *qui tam* action.   But he refused to award a judgment for penalties on the ground that by chapter 391 of the laws of 1933 (*Pamph. L., p.* 1093; *N. J. Stat. Annual* 1934, § 85-8), the legislature undertook to repeal section 8 of the Gambling act, and in 1934, by chapters 56 and 179 (*Pamph. L., pp.* 159, 432; *N. J. Stat. Annual* 1934, § *136-46001(95) and § 7-212), further undertook to authorize the leasing of certain municipal properties for greyhound racing in violation of the pre-existing law, and the licensing of such racing.   It is easy to read between the lines that Judge Lawrence considered these acts of 1933 and 1934 to be in flat defiance of the constitution, as the Court of

Chancery seems to have done in the case of *State Racing Commission* v. *Atlantic Kennel Club,* September, 1934, without filing an opinion, and as the Supreme Court has just done in *Gimbel* v. *Peabody,* 114 *N. J. L.* 574. We fully concur in that view. But the trial judge appears to have deemed himself controlled by the opinion in this court in the case of *Lang* v. *Bayonne,* 74 *Id.* 455, affirming a judgment in the Supreme Court, 73 *Id.* 109; and quotes therefrom as follows: (74 *Id.,* at foot of *p.* 461): "Every law of the legislature, however repugnant to the constitution, has not only the appearance and semblance of authority, but the force of law. It cannot be questioned at the bar of private judgment, and if thought unconstitutional, resisted, but must be received and obeyed, as, to all intents and purposes, law, until questioned in and set aside by the courts."

This quotation from Lang *v.* Bayonne is itself a quotation from an opinion by Chief Justice Butler of Connecticut in *State* v. *Carroll,* 38 *Conn.* 449. Apparently, it was approved and adopted by the late Chief Justice Gummere in Lang *v.* Bayonne, but it goes much farther than was required by that case, and is clearly *obiter dictum,* and of a somewhat dangerous kind; for if followed to its logical conclusion, it would result in barring any inquiry into the constitutionality of any statute except such as the legislature itself authorizes, as for example in the class of cases arising under the act of 1873 (*Comp. Stat., p.* 4979); see *In re Public Utility Board,* 83 *N. J. L.* 303; *In re Ross,* 86 *Id.* 387. For if every citizen must obey every law, no matter how plainly unconstitutional, until there is a judicial declaration of such unconstitutionality, it is apparent that no such declaration can ever be obtained; because apart from the act of 1873, just alluded to, there is no method of direct attack upon a statute as such. The attack always has been, and must be, connected with the enforcement of some claimed legal right denied by the statute sought to be questioned, or with resistance to some legal wrong involved in such enforcement. In elucidating this proposition, we need go no farther than two of our great hornbook cases on constitutional law, *Dartmouth College* v.

*Woodward,* 4 *Wheat.* 518, and *M'Culloch* v. *Maryland,* in the same volume (at *p.* 316). The question in the Dartmouth College case was whether the legislature of New Hampshire could by statute impair the charter of the college granted by George III, without running counter to the "obligation of contracts" clause in the national constitution. That question was decided in an action of trover for money damages because of the appropriation of the college records and corporate seal. M'Culloch *v.* Maryland raised the question whether congress under the national constitution had power to charter the United States Bank; and in connection with this, the question whether the State of Maryland was entitled to collect a tax from a branch of the national bank within its confines. That action, like the one before us, was a *qui tam* action under the Maryland statute to recover a penalty from the officers of the branch bank for doing business without taking out a Maryland charter. It was held, that the act of congress was valid, and that the Maryland statute was nugatory as against it. If the holding had been the other way, the plaintiff would have recovered in the *qui tam* on the ground that the state act was good and the act of congress invalid. Obviously, the citizen has a right to raise by litigation the validity of a statute, where his rights are involved, and the statute purports to affect those rights. Were this not so, our bill of rights would be so much waste paper. Quakers might be forbidden to sue in courts of law; Methodists might be barred from holding public office; jury trial might be abolished; informations could be substituted for indictments; private property taken for public use without compensation. Such a case as *State* v. *Wrightson,* 56 *N. J. L.* 126, 186, would not have been entertained. *Katz* v. *Eldredge,* 96 *Id.* 382; 97 *Id.* 123, would, under the ruling in Lang *v.* Bayonne, as we understand it, have gone off on a mere construction of the statute. Of course this cannot be so; and that it is not so, is shown by another opinion of the same Chief Justice in the very next volume. *Central Railroad Co.* v. *State Board of Assessors,* 75 *Id.* 771. In that case the company attacked, by *certiorari,* certain tax assess-

ments based on three supplements in 1906 to the Railroad Tax act of 1884. Referring to one of them, at the foot of page 786, the Chief Justice says: "The fact that the supplement of May 18th, 1906, is void, does not, in our judgment, operate to destroy the act itself. The supplement never had any vitality. It is as if it had never been passed * * *."

The question, and the only question, directly decided in Lang v. Bayonne was whether Lang could reverse his discharge as a policeman by a municipal board of commissioners, on the ground that said board had no status because organized under an allegedly unconstitutional statute. The Supreme Court held that he could not, because the board was at least *de facto,* exercising public functions under a color of right (73 *N. J. L.* 109). In this court, the single headnote to a somewhat lengthy opinion, reads as follows: "An officer appointed under authority of a statute, to fill an office created by that statute is at least a *de facto* officer, and acts done by him antecedent to a judicial declaration that the statute is unconstitutional are valid, so far as they involve the interests of the public and of third persons." This is all that was involved in the actual decision; and so far as the discussion in the opinion goes beyond it, such discussion was *obiter.* So far, moreover, as it purports to intimate that a citizen is not entitled to raise the point of unconstitutionality in assertion or defense of his rights, and must wait some indefinite other person to do so, we cannot follow it. To do so would be to ignore hundreds, perhaps thousands of decisions, here and in other states and in the federal Supreme Court, where such rights have been successfully asserted in the face of a statute.

The Lang case has been cited many times, but we think only twice in this court on the point directly involved here. In *State* v. *Toth,* 86 *N. J. L.* 249, 251, it was cited in this court as authority for the proposition that a decision of the Supreme Court in regard to a statute, and acts thereunder, prior to reversal here, are valid so far as they involve the rights of the public or third persons. With that we have no present quarrel, as it is not involved in this case. In *Over-*

*peck Land Co.* v. *Ridgefield Park,* 104 *Id.* 402, we held that an ordinance not judicially declared invalid in a case relating to that particular ordinance, was properly admitted in evidence where material and relevant. That, also, is not this case.

In view of what has been said above, perhaps at undue length, we conclude that the three acts, one of 1933, the others of 1934, were plainly unconstitutional, and invalid; that the recital in the latter two of "emergency legislation" was merely specious; that the section of the Gaming act purported to be repealed remained in force, and was in force at the time mentioned in the complaint; that the plaintiff had a right of action to recover in a *qui tam;* and that the refusal to award a judgment in his favor on the admitted facts of the case was error.

The judgment will accordingly be reversed, and the case remanded to the Supreme Court with directions to enter a judgment for plaintiff. Such judgment might be entered directly in this court, but as a practical matter the case should go back to the Supreme Court to enforce the judgment, when entered, by suitable process.

*For affirmance*—None.

*For reversal*—THE CHANCELLOR, CHIEF JUSTICE, PARKER, LLOYD, CASE, BODINE, DONGES, HEHER, PERSKIE, VAN BUSKIRK, KAYS, HETFIELD, DEAR, WELLS, JJ. 14.