Hudson County Circuit Court.

PETER BYRNES ET AL., PLAINTIFFS, v. BOULEVARD COM-
MISSIONERS OF THE COUNTY OF HUDSON AND
COUNTY OF HUDSON, DEFENDANTS.

Decided March 9, 1938.

For the plaintiffs, *Frank H. Eggers.*

For the defendants, *J. Emil Walscheid.*

BROWN, C. C. J. The above entitled cause was tried before
the court without a jury upon the pleadings and an agreed
state of facts. The plaintiffs are fifty-eight in number, fifty-
seven of whom were within the classified service of the Civil
Service act and one, the head of the police department of the
Hudson county boulevard commission, in the unclassified
service as defined in that act. The suit is brought to recover
salaries from the time of the alleged illegal discharge of the
plaintiffs by the Hudson county park commission to the time
of their reinstatement by the defendant boulevard commis-
sioners of Hudson county. The law under which the Hudson

county park commissioners assumed office was declared constitutional by the New Jersey Supreme Court and that decision was reversed by the New Jersey Court of Errors and Appeals. The offices and positions held by the plaintiffs were abolished and the plaintiffs discharged on the ground of economy by the Hudson county park commission while that body assumed jurisdiction over the offices and positions of the plaintiffs, as well as other matters, theretofore controlled by the defendant commissioners. According to the facts stipulated it is agreed that on April 22d, 1930, the defendant commissioners had as its members Theodore A. Kleffman, John G. Meister and Frank B. Chapman. On that date the legislature passed a law, chapter 261, *Pamph. L.* 1930, *p.* 1092, wherein it was enacted that the offices of the defendant boulevard commissioners was abolished and all the duties and powers vested by law in such commissioners were thereafter to be exercised and performed by the Hudson county park commission. On the date last mentioned the legislature passed an act, chapter 262, *Pamph. L.* 1930, *p.* 1093, amending chapter 277, *Pamph. L.* 1902, *p.* 811, by which amendment the government and control of Hudson county parks were intended to be vested in the Hudson county park commission, the members of which were to be appointed by the governor instead of the judges of the Court of Common Pleas. The amendment provided the park commission was a body politic, with power to sue and be sued and exercise the usual powers of passing by-laws and completing other organization matters. The governor, pursuant to the law enacted, appointed James W. McCarthy and four others to be known as the Hudson county park commission. Those appointees organized and thereupon demanded of Theodore A. Kleffman and his associates a surrender of the franchises, books, papers and the like of the boulevard commissioners. The demand was refused and on April 29th, 1930, McCarthy and his associates filed in the New Jersey Supreme Court an information in the nature of a writ of *quo warranto* against Kleffman and his associates. On November 18th, 1930, a judgment of ouster was entered in the *quo warranto* proceedings in favor of

McCarthy and his fellow appointees. (See *McCarthy et al.* v. *Kleffman et al.*, 107 *N. J. L.* 223; 152 *Atl. Rep.* 175). Kleffman and the other boulevard commissioners in compliance with the judgment of ouster did surrender all the insignia of their office and immediately ceased to function as boulevard commissioners and those functions were transferred to and assumed by the Hudson county park commission. The defendant boulevard commissioners thereupon appealed the judgment of ouster to the New Jersey Court of Errors and Appeals, which court reversed the judgment of the New Jersey Supreme Court on October 20th, 1931, and decided that chapters 260, 261 and 262, *Pamph. L.* 1930, were unconstitutional and void. (See *McCarthy et al.* v. *Kleffman et al.*, 108 *N. J. L.* 282; 156 *Atl. Rep.* 772). McCarthy and his associates while functioning as the Hudson county park commission did discharge the plaintiffs from their respective positions and did abolish their positions "as useless and unnecessary to the efficient and economical conduct of the administration of the affairs of said Hudson county park commission." Group No. 1 of plaintiffs as set forth in the facts stipulated were discharged by resolution adopted December 1st, 1930; Group No. 2 by resolution adopted February 3d, 1931, and Group No. 3 by resolution adopted September 14th, 1931. The defendant boulevard commissioners restored all the plaintiffs to their positions by a resolution adopted by those commissioners on December 1st, 1931. The claims of the plaintiffs cover the period from the date of discharge to the date of reinstatement. Though the plaintiffs were promptly notified of their discharge by the Hudson county park commission, no appeal or complaint was lodged with the civil service commission nor any other action taken to test the legality of their discharge. The plaintiffs did not render any services from the time of their discharge to the date of their reinstatement though they claim to have been ready, able and willing to do so; no offer was made in that direction. The agreed state of facts contains the civil service classification of the plaintiffs, as hereinbefore stated; a description of their positions and the amount of salaries

claimed due amounting in all to $115,724.43. The plaintiffs contend the action of the Hudson county park commission in discharging the plaintiffs was void and of no effect *ab initio* because the legislation creating that commission was declared unconstitutional and therefore the plaintiffs were illegally discharged from their positions. The plaintiffs argue the members of the park commission were not *de facto* officers for they claim there was no office *de jure* for them to occupy; that they had no apparent authority to act; that the law creating them was void from the beginning and continued to be without legal effect and afforded neither apparent power or color of title. In support of these contentions reference is made to the cases of *Norton* v. *Shelby County,* 118 *U. S.* 425; *Flaucher* v. *Camden,* 56 *N. J. L.* 244; 28 *Atl. Rep. Rep.* 82; *Toomey* v. *McCaffrey,* 116 *N. J. L.* 364; 184 *Atl. Rep.* 835, and particularly *Hyman* v. *Long Branch Kennel Club, Inc.,* 115 *N. J. L.* 123; 179 *Atl. Rep.* 105. The defendants contend that the decision of the New Jersey Supreme Court upholding the legislation under which the boulevard commissioners were ousted from their offices and the park commission having assumed the powers and duties of the boulevard commissioners constituted the law of the state until reversed by the Court of Errors and Appeals and all acts done by the park commission in pursuance of the law thus declared prior to such reversal are valid so far as they involve the interests of the public or third persons. The action of the commission in abolishing the employment of the plaintiffs on the ground of economy in the public service was not void but legal and binding upon the plaintiffs. It is also contended the plaintiffs have no right to bring their suit because the resolutions discharging them have not been passed upon by the civil service commission and reviewed in *certiorari* proceedings. The passage of time has not clarified, in the reported decisions, the dispute that has existed for many years as to the protection to be afforded to acts done under an unconstitutional law. In our state the case of *Lang* v. *Bayonne,* 74 *N. J. L.* 455; 68 *Atl. Rep.* 90, decided the course to be followed in this state. Evidently the reason for the

conclusion arrived at in that case was to keep disorder and chaos out of governmental affairs and establish a rule to that end. The rule is that: "An officer appointed, under authority of a statute, to fill an office created by that statute is at least a *de facto* officer, and acts done by him antecedent to a judicial declaration that the statute is unconstitutional are valid, so far as they involve the interests of the public and of third persons." This determination in the Lang case does not appear to have been overruled in later decisions in our state. In *Hyman* v. *Long Branch Kennel Club, Inc., supra* (a Court of Errors and Appeals decision), the court expressly stated that it did not reverse the above quoted finding in the Lang case when in referring to that determination said: "With that we have no present quarrel as it is not involved in this case." In a later case, *Toomey* v. *McCaffrey, supra* (a Supreme Court decision), reference is made to the question of what constitutes a *de facto* officer but the question was not decided in that case as plainly appears from the language used which is in part: "The question might arise in the mind of some, though it is not raised in the briefs of either side, whether the relator might not, as a *de facto* officer, have acquired rights to this office. That consideration immediately raises the query as to whether there can be a *de facto* officer when a *de jure* office does not exist. It has been held that there cannot legally be a *de facto* officer unless there is an office *de jure*. *Norton* v. *Shelby County*, 118 *U. S.* 425 (and other cases), and a contrary view is expressed in *Lang* v. *Bayonne*, 74 *N. J. L.* 455; 68 *Atl. Rep.* 90 (and other cases)." In the Toomey case the question of a *de facto* officer had no bearing on the case for the court disposes of this proposition by stating, "we find it unnecessary to pursue this inquiry since the relator's claim rests on no such theory." The Supreme Court did in the Toomey case refer to the fact that the decision in *Lang* v. *Bayonne, supra,* was overruled in part in the Hyman case, but the part thus overruled was not the determination in Lang *v.* Bayonne of the protection that should be given to things done by an officer acting under an unconstitutional law before it is declared unconstitutional.

As to this proposition the Lang case is still the law of New Jersey. It is singular that contrary views have arisen when you consider the almost unanimous approbation that is given to the case of *State* v. *Carroll*, 38 *Conn.* 449. The decision in *Norton* v. *Shelby County, supra,* refers to the decision in the Carroll case as being "an elaborate and admirable statement of the law." The decision in the Lang case concurs in this encomium. The United States Supreme Court, more recently in the case of *United States* v. *Royer,* 268 *U. S.* 394, characterized the case of the State *v.* Carroll as being the leading case on the propositions under discussion. An interesting definition of what constitutes a *de facto* officer may be found in the case of *United States* v. *Royer, supra,* where the following definition is adopted: "A *de facto* officer may be defined as one whose title is not good in law, but who is in fact in the unobstructed possession of an office and discharging its duties in full view of the public, in such manner and under such circumstances as not to present the appearance of being an intruder or usurper." "A *de facto* officer is one who is surrounded with the insignia of office, and seems to act with authority." The supreme law of the state is its constitution. All statutory law to be valid must conform to the constitution. The judicial and legislative branches of our government should exercise their legitimate governmental functions without encroachment by one upon the other. When the legislature enacts a law and it is signed by the governor it is presumed to be constitutional. *In re Drainage Application,* 35 *N. J. L.* 497; *Road Commission* v. *Harington Township,* 55 *Id.* 327; *Dixon* v. *Russell,* 78 *Id.* 296; 73 *Atl. Rep.* 51; 12 *Corp. Jur.* 791. According to *Allison* v. *Corker, Assessor (Court of Errors and Appeals),* 67 *N. J. L.* (at *p.* 600); 52 *Atl. Rep.* 362, to state that an unconstitutional act is void is not wholly a correct statement, it is rather an unenforceable piece of legislation because it conflicts with a paramount law. The solemn act of the legislature is a fact to be reckoned with. Even the courts are without power to expunge or remove the unconstitutional act from the statutes of the state. It is an existing thing whether constitutional

or otherwise. The language of the court in *Allison* v. *Corker, Assessor, supra,* on this point is pertinent, "but I am prepared to go further and hold that an unconstitutional statute is nevertheless a statute—that is, a legislative act. Such a statute is commonly spoken of as void. I should prefer to call it unenforceable because in conflict with a paramount law. If properly to be called void, it is only so with reference to claims based upon it. Neither of the three great departments to which the constitution has committed government by the people can encroach upon the domain of another. The function of the judicial department, with respect to legislation deemed unconstitutional, is not exercised *in rem,* but always *in personam.* The Supreme Court cannot set aside a statute as it can a municipal ordinance. It simply ignores statutes deemed unconstitutional. For many purposes an unconstitutional statute may influence judicial judgment, where, for example, under color of it, private or public action has been taken. An unconstitutional statute is not merely blank paper. The solemn act of the legislature is a fact to be reckoned with. Nowhere has power been vested to expunge it or remove it from the proper place among statutes." Another case that indicates the inaptness of saying that an act declared unconstitutional by the courts is void is the case of the *Attorney-General* v. *McGuinness (Court of Errors and Appeals),* 78 *N. J. L.* 346, where the following language is used: "There can indeed be no greater mistake than that of regarding the power exercised by state courts in declaring legislative enactments unconstitutional as something different from and merely engrafted upon their purely judicial functions. For such mistaken conception leads to the radical error that, if duly challenged, a legislative act will be sustained only when it is demonstrably constitutional. Such a notion in effect supplements the constitution by requiring the affirmative concurrence of all three departments of the government where that instrument of the organic law requires but two, viz., the legislative and the executive, and thus in effect annexes to the judicial branch a *quasi*-legislative function akin to that which the constitution itself has annexed to the executive by the veto power. That no such direct partici-

pation of the judicial department in what is essentially an incident of the law-making power, viz., the observance of constitutional limitations, was contemplated by the framers of the constitution is conclusively shown by the fact that no such provision was made by the constitution. If such participation, which amounts to a control equal in efficiency to the veto power conferred upon the executive, had been intended to be conferred upon the judiciary, it is incredible that a provision of such magnitude would not have received a like mention. As a matter of common knowledge in ninety-nine cases out of a hundred or even in a larger proportion the laws enacted by the legislature derive their entire validity as constitutional enactments solely from the source where the constitution itself has placed the determination of constitutional observance as an incident of the law-making power, viz., with the legislative and executive departments. No way is provided by the constitution, or even remotely suggested, by which the validity of such determinations may be either anticipated or postponed or held in abeyance until the result of a judicial participation can be heard from. In the vast majority of cases the judicial judgment is never invoked. What actually takes place is, that if in the course of litigation between parties it happens that the issue is affected by a legislative act, the courts decide the question thus arising upon judicial principles as an incident of litigation and not upon *quasi*-legislative principles as an incident of the law-making or vetoing power. The difference in principle is fundamental and the practical distinction as clear and of the same nature as that which is applied every day in the review of verdicts, where the question is not whether the court finds that a given state of facts is as the jury found it, but whether it finds that such given state of facts could not be legitimately found by the jury. The error of which we are speaking is reflected in the common expression that an act of the legislators is set aside by the courts, whereas the truth is that courts never set aside acts of the legislature in the sense that they set aside municipal ordinances or public grants on direct attack. What the courts do is to declare in the course of a specific litigation that the rights of a party thereto are not affected

by a certain statute for the reason of its non-conformity to the paramount law."

The judgment of the Supreme Court in *McCarthy et al.* v. *Walter et al.* 107 *N. J. L.* 223; 152 *Atl. Rep.* 175, was a final judgment and was the law until reversed. *Handwerk* v. *Guttenberg,* 92 *N. J. L.* 181; 105 *Atl. Rep.* 226; *Attorney-General* v. *Town of Dover,* 62 *N. J. L.* 138. It should be noted also that the case of *McCarthy* v. *Walter et al.,* 108 *Id.* 282, was a *quo warranto* proceeding that dealt only with the title or right to the office under section 4 of the *Quo Warranto* act. *Pamph. L.* 1903, *p.* 377; 3 *Comp. Stat., p.* 4212. The case could not possibly deal with any other issue. As Chancellor Campbell said in that case, the existence of an office cannot be inquired into by a contending relator under section 4 of the *Quo Warranto* act. *Pamph. L.* 1903, *p.* 377; 3 *Comp. Stat., p.* 4212.

The legal and empowered branch of our government to declare a law unconstitutional is our courts. Comparatively few of the laws enacted are subjected to a constitutional test in a court proceeding. Much time passes, as a rule, between the enactment of a law and a judicial determination of its constitutionality. Where the law affects governmental functions public necessity very often requires a continuance of those functions. In the consideration of the rights of an individual holding a public office or position he is protected by the constitution. The public peace and orderly administration of governmental functions should be maintained while the disputed individual right to office is decided by our courts. If private judgment as to what is the law and its enforcement is followed then we have the shortest cut to public disorder and chaos. In the instant case if private judgment was the test as to the laws in question being valid or invalid it is quite possible to conceive of two sets of laborers, mechanics, police officers, secretaries and officials contending by force and possibly violence to carry on the functions of the department. A decision by the Supreme Court would not determine the dispute it would require a decision of the court of last resort and even the court of last resort has been known to reverse some of its decisions. On this point it is worthy of

notice that the United States Supreme Court within the past few days reversed two of its decisions of long standing. To say that an unconstitutional law is invalid *ab initio* and affords no protection for acts performed by *de facto* officers or those exercising public functions under color of title is inviting the disorder and chaos mentioned. Considering the case of *Norton* v. *Shelby County, supra,* in all its ramifications it is not a barrier to the conclusion that the park commissioners acted as *de facto* officers in discharging the plaintiffs. In the light of the decision in the McCarthy case in the Court of Errors and Appeals, the office of boulevard commissioners of Hudson county was not abolished by the unconstitutional legislation and the park commission was not legally created. The functions of the office were not abolished by the decision last mentioned and the unconstitutional legislation was abortive in its effect to that end. The office and the insignia or franchise thereof having continued as well as the functions and powers thereof the only change that occurred was the exercise of the franchise, powers and functions of the office by the park commission when and after the franchise, powers and functions of the office were transferred by the defendant commissioners to the park commission under the judgment and direction of the Supreme Court. The reversal of this judgment, *ipso facto,* restored the franchise, powers and function of the office to the defendant commissioners. No enabling legislation was required to produce this result for the reason that the office continued in existence it was only the powers and functions of the office that were exercised by one set of officers under apparent power and authority created by laws that were presumptively constitutional and declared by a court of competent jurisdiction to be so and upon surrender by the defendant commission of the franchise, powers and functions of the office. *Erwin* v. *Jersey City (Court of Errors and Appeals),* 60 *N. J. L.* 141; 37 *Atl. Rep.* 732; *Lang* v. *Bayonne,* 73 *N. J. L.* 109; 62 *Atl. Rep.* 270; *affirmed,* 74 *N. J. L.* 455; 68 *Atl. Rep.* 90; *von Nieda* v. *Bennett (Court of Errors and Appeals),* 117 *N. J. L.* 231; 187 *Atl. Rep.* 629; *Kirker* v. *City of Cincinnati,* 48 *Ohio* 507; 27 *N. E. Rep.* 898.

This court does not subscribe to the proposition that the defendant commissioners were a *de jure* commission without color of office and, as such, became responsible for salaries to men who rendered no services to that commission or to any other, but in seeking to serve another commission were by it discharged.

The finding is made that the Hudson county park commission when they discharged the plaintiffs were acting as *de facto* officers. While their title to the office was not good in law they had unobstructed possession of the office according to a judgment of the Supreme Court; they were discharging the duties of the office in full view of the public in such manner and under such circumstances as not to present the appearance of being intruders or trespassers. They were surrounded with and possessed the insignia and all the possessions of the office which were transferred to them by the defendant boulevard commissioners. Their acts in discharging the plaintiffs were, therefore, legal. *United States* v. *Royer, supra; Lang* v. *Bayonne,* 74 *N. J. L.* 455; *State* v. *Toth (Court of Errors and Appeals),* 86 *N. J. L.* 247; 90 *Atl. Rep.* 1125; *State* v. *Carroll, supra.* It is not necessary to answer the query as to the remedy available to the plaintiffs under the circumstances of their discharge. They could have invoked the right of appeal to the civil service commission (see section 24 of the Civil Service act), and by writ of *certiorari. Keegle* v. *Hudson County,* 99 *N. J. L.* 26; 122 *Atl. Rep.* 606; *affirmed,* 102 *N. J. L.* 219; 130 *Atl. Rep.* 919; *Dinkel* v. *County of Hudson,* 5 *N. J. Mis. R.* 326; 136 *Atl. Rep.* 420; *affirmed,* 104 *N. J. L.* 659; 141 *Atl. Rep.* 919; *Lindsey* v. *County of Hudson,* 10 *N. J. Mis. R.* 627; 160 *Atl. Rep.* 212. A suit for salary is not a proper suit to determine a title to an office or position. The court finds as the facts established in the case those recited in the stipulation made between the parties, the pertinent part of which has been hereinbefore referred to, and concludes as a matter of law and decision in the case that the plaintiffs have no cause of action against any of the defendants. The judgment of the court is that of no cause of action in favor of both defendants and against all the plaintiffs.