157 N.J. Super. 242 (1978)
384 A.2d 894
STATE OF NEW JERSEY, PLAINTIFF-APPELLANT, AND OCEAN GROVE CAMP MEETING ASSOCIATION, INTERVENOR,
v.
LOUIS CELMER, JR., DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued November 22, 1977.
Decided March 10, 1978.
*243 Before Judges MATTHEWS, CRANE and ANTELL.
Mr. Donald W. Peppler, Jr., Assistant Prosecutor, argued the cause for appellant (Mr. James M. Coleman, Jr., Monmouth County Prosecutor, attorney; Mr. Thomas E. Primavera, Assistant Prosecutor, of counsel and on the brief).
*244 Mr. Robert A. Abrams argued the cause for the intervenor (Mr. Henry H. Patterson, attorney).
Mr. William B. Gallagher, Jr., argued the cause for respondent (Messrs. Klitzman, Klitzman & Gallagher, attorneys).
The opinion of the court was delivered by MATTHEWS, P.J.A.D.
Defendant was convicted in the Municipal Court of Ocean Grove of driving under the influence of alcohol (N.J.S.A. 39:4-50(a)); speeding (N.J.S.A. 39:4-98), and disregarding a traffic signal (N.J.S.A. 39:4-81). After a trial de novo on the record below, the Monmouth County Court sustained the conviction for driving under the influence, but reversed the speeding and disregard of a traffic signal convictions on the ground that they merged into the drunk driving offense. However, defendant at the trial de novo, raised for the first time, the issue of lack of jurisdiction of the municipal court because the statute, N.J.S.A. 40:97-1 et seq., granting powers to the Ocean Grove Camp Meeting Association (Ocean Grove) to establish a municipal court is unconstitutional. Thereafter, the County Court judge sustained defendant's argument and vacated his conviction finding that "[t]he Municipal Court of Ocean Grove, not being lawfully established, is without jurisdiction." State v. Celmer, 143 N.J. Super. 371, 377 (Cty. Ct. 1976).
The State argues that we should ignore the constitutional issue because the Ocean Grove Municipal Court had jurisdiction to decide these offenses on the theory of de facto jurisdiction and because no objection to the Ocean Grove Municipal Court's authority was raised in that court. The argument is based principally on the decision of the former Court of Errors and Appeals in Lang v. Bayonne, 74 N.J.L. 455 (1907). Lang involved the efforts of a police officer to gain reinstatement on the Bayonne City police force on the theory that the act creating the city board of commissioners which *245 had terminated his employment had subsequently been declared unconstitutional. Plaintiff's discharge from the police force was upheld on the theory that whenever a statute creates an office and provides for an officer to carry out its functions, the acts of such officer must have the force of law notwithstanding a constitutional defect in the enabling legislation:
* * * A statute which creates an office and provides an officer to perform its duties must have the force of law until condemned as unconstitutional by the courts, and that in the meantime the officer so provided is an officer de facto, that it is impliedly recognized and acted on, almost universally (so far as my examination has disclosed), in the case of municipal corporations which have been created by unconstitutional laws. * * * [74 N.J.L. at 462]
See also, State v. Pillo, 15 N.J. 99 (1954), cert. den. 348 U.S. 858, 75 S.Ct. 78, 99 L.Ed. 673 (1954).
While the doctrine enunciated in Lang and Pillo may well be applicable to those acts performed by judges of the Municipal Court of Ocean Grove prior to the challenge to its jurisdiction in this case, we do not think that it has applicability here since the jurisdictional issue has been directly raised in these proceedings which involve the charges against defendant. Nor do we agree with the State's argument that the failure of defendant to raise the defense of lack of jurisdiction or the unconstitutionality of the statute in the municipal court amounted to a waiver of those defenses. The trial judge concluded that there was no waiver by virtue of R. 3:10-2 to 4. While we disagree with his reasoning in this respect, we agree that there has been no waiver. It has always been the better practice for an inferior court to assume that an act is constitutional until it has been passed upon by an appellate court. The municipal court is an inferior court and it is not ordinarily within its purview to deal with debatable questions relating to the constitutionality of statutes, especially those of long standing. See Legg v. Passaic Cty., 122 N.J.L. 100, 104 *246 (Sup. Ct. 1939), aff'd o.b., 123 N.J.L. 263 (1939). We think that the constitutional challenge to jurisdiction was properly raised by defendant in the County Court at the trial de novo.
We find the issue in this case to be controlled by the opinion of our Supreme Court in Schaad v. Ocean Grove Camp Meeting Ass'n, 72 N.J. 237 (1977), decided after the County Court's decision herein. In Schaad the court held that the statutes giving municipal police powers to camp meeting associations did not violate the Establishment Clauses of the United States and New Jersey Constitutions because a primary or principal effect of those statutes was not to advance religion but rather to create a mechanism for basic local regulation of the camp meeting community:
* * * Examined in the light of the history of the birth and early development of Ocean Grove, it will be evident that the statutes had the "secular legislative purpose" of giving the governing body of the camp meeting association the authority to adopt regulations for the good order, proper physical development and general health and welfare of the new community. These purposes are not a whit less secular in nature than if they had been given to a conventional municipal governing body. By the same token, the "principal or primary effect" of the enabling legislation will be found to be parallel to its "secular purpose." The powers given, as will be observed, were the rudimentary police powers which any community had to be vouchsafed, especially a new one in an isolated area sprung up from unimproved lands in the 1870's, to prevent disorder, lay out streets, provide for sewage and other health facilities, regulate and license tradesmen, etc. None of these powers, as enumerated in the enabling legislation, had or have any effect toward advancing or inhibiting religion, much less a "principal or primary effect" in either of those directions.

* * * * * * * *
* * * The instant statutes, whose plain purpose and effect are to regulate the general health, safety and welfare of the camp meeting association and its tenants, have, to the contrary, only the remotest functional connection, if any, with religion. * * * "[O]nce it is determined that a challenged statute is supportable as implementing other substantial interests than the promotion of belief, the guarantee prohibiting religious `establishment' is satisfied."

* * * * * * * *
*247 We now pass to consideration of the third of the three Lemon criteria: whether the questioned legislation fosters "an excessive government entanglement with religion." * * * [72 N.J. at 253, 262]
The issue resolved in Schaad involved the validity in establishment terms of the structure of the local government of Ocean Grove, and not a question of the validity, in establishment or other terms, of any particular regulation adopted by the governing body of Ocean Grove, such as the Sunday Closing Law which gave rise to the controversy.
Schaad would be dispositive of this case were it not for a reservation expressed by the court in its opinion with respect to it:
* * * We here take no position on the strict holding in Celmer that the legislative vesting of power to establish a municipal court in camp meeting associations of religious origin is in violation of the Establishment clause. Such a power was not contained in the 19th century police power legislation under scrutiny here but was granted by the amendment of N.J.S.A. 40:97-4 contained in P.L. 1953, c. 37, § 274. The power to create a court, granted by this latter-day amendment, may well be distinguishable from the subject matter of the original legislation in the light of the rationale, developed later herein, for sustaining the validity of the earlier statutes. [at 252, fn. 5]
Our research into the matter leads us to the conclusion that there is no real historical difference between the grant of authority by the Legislature in L. 1953, c. 37, § 274, to establish a municipal court in Ocean Grove and the original grant of 19th Century police powers by the New Jersey Legislature.
At present the Ocean Grove Municipal Court exercises its authority in the community of Ocean Grove under N.J.S.A. 40:99-1, as amended by L. 1953, c. 37, § 276. However, the existence of a local court in Ocean Grove actually predates the 1953 amendment by some 77 years.
Ocean Grove originally established a local municipal court under the authority of a police justice pursuant to L. 1876, c. 149, § 2 (Rev. 1877, § 36; C.S. p. 355, § 2; R.S. 40: *248 99-2) which was repealed by L. 1953, c. 37, § 277. The 1876 act, entitled "An act for the better preservation of the peace upon the premises of camp meeting associations," read in pertinent part:
1. * * * it shall be lawful for the Governor, on the application in writing of the Board of Trustees of any camp meeting association * * * to commission one or more persons whom such trustees shall designate and request, not exceeding six in number as peace officers, for the purpose of keeping order on the camp grounds and premises of such incorporated associations aforesaid, which officers shall have, when on duty, the same power, authority and immunity which Constables and other peace officers under the laws of this State possess and enjoy, * * *.
2. * * * that one of the said officers so designated, shall be especially commissioned as aforesaid for each or any one of said associations so as to possess within the limits of its property aforesaid, all the powers and jurisdiction in criminal cases which police justices now or hereafter may be authorized to exercise within any town or city in this State, or for the enforcement of the act in the preceding section mentioned, or of any other act tending to the preservation of order.
Pursuant to that legislative grant of authority, Ocean Grove applied for the appointment of six peace officers, one of whom received a commission as the police justice.[1] As police justice the appointee was entitled to exercise the same authority as other police justices of the State. Under L. 1883, c. 137, § 4, subsections I, II and III, police justices were permitted to exercise power, authority and jurisdiction over criminal matters and complaints arising in the municipality for which they were appointed. Their respective powers were stated to be the same as the justices of the peace for the several counties of the State. A police justice had power to hear, try and determine such criminal matters and complaints, and was authorized to hold *249 court within the municipality for which he was appointed. He was also authorized to hear, try and determine all offenses charged before him by complaint in writing on oath or affirmation, to have been committed in violation of any by-law or ordinance of the municipality of his appointment for which the punishment was by fine or imprisonment. Every police justice court was a court of record and was vested with all powers usually exercised by courts of record in this State. Ocean Grove maintained such a court for 77 years.[2]
The police justice courts were constituted and established as municipal courts of their respective municipalities and designated as municipal courts under L. 1948, c. 264, § 15 (N.J.S.A. 2A:8-2). The transition from police court to municipal court was actually in name only. The Municipal Court of Ocean Grove was continued in its authority exercising its powers pursuant to N.J.S.A. 2A:8-1 et seq. and N.J.S.A. 40:97-4, and continues in the exercise of those powers to date. It is therefore readily seen that the police justice court which exercised its jurisdiction in Ocean Grove for those many years is not historically distinguishable from any other police courts established early in the judicial history of our State. The Ocean Grove Municipal Court has existed almost contemporaneously with the governing body established in 1870 and declared valid by the Supreme Court in Schaad.
While the Supreme Court indicated in Schaad, without deciding, that the power to create a municipal court, granted by a latter-day amendment, might well be distinguishable from the subject matter of the original legislation, we conclude that no distinction can be made. We find it difficult, if not virtually impossible, to differentiate between the exercise of legislative power by the governing body of *250 Ocean Grove held to be valid in Schaad, and the exercise of that same power by the governing body in creating a municipal court.
As in Schaad, the issue before us here involves the validity in establishment terms of the constitution and existence of the Municipal Court of Ocean Grove, and not the validity of any particular ordinance or by-law adopted by the governing body of the community. We need not speculate, therefore, on the question of the validity of the enforcement in Ocean Grove Municipal Court of local by-laws and ordinances adopted by the board of trustees under the powers granted to it under, e.g., N.J.S.A. 40:95-2, 3 and 4, since we are here concerned with the enforcement of state statutes prescribing motor vehicle operation, a jurisdiction granted to all municipal courts by the Legislature under N.J.S.A. 2A:8-21.
Accordingly, for the reasons fully set forth in the majority opinion in Schaad v. Ocean Grove Camp Meeting Ass'n, 72 N.J. 237 (1977), we are constrained to conclude that the trial judge erroneously decided that the Municipal Court of Ocean Grove was unconstitutionally created. Defendant's conviction for violation of N.J.S.A. 39: 4-50(a) is reinstated and the cause remanded to the Monmouth County Court for the imposition of an appropriate sentence. As noted, defendant was originally convicted in the municipal court for violations of N.J.S.A. 39:4-81 and 98. The County Court judge acquitted defendant of those offenses ostensibly because he was satisfied that the State had not proven them, although the transcript seems to indicate that he dismissed the charges because he found that they merged into the drunk driving conviction. Since the State has not raised the issue of merger or acquittal on this appeal, we do not pass on that holding.
The judgment of the County Court acquitting defendant of the charges under N.J.S.A. 39:4-50(a) is reversed and the cause remanded to the Monmouth County Court for sentencing. We do not retain jurisdiction.
NOTES
[1] Centennial by the Sea, Seventh Annual Report of the President of the Ocean Grove Camp Meeting Asso'n, Published by Order of the Association 1876, p. 15.
[2] Within that period, Ocean Grove was privileged to have such a distinguished member of the bar as later Justice Proctor presiding as a Police Justice.